**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROLYN SWAN,** | ) | |
| **on behalf of KALEB WRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  04 C 5466** |
| **v.** | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | **HONORABLE DAVID H. COAR** |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Carolyn Swan ("Swan" or "Plaintiff") brought this suit against the Social

Security Administration ("SSA") on behalf of her son, Kaleb Wright ("the son" or "Kaleb"), to

collect child's insurance benefits and a death payment on the account of decedent Claude A.

Wright ("decedent" or "wage earner").  Through the standard SSA administrative processes,

Plaintiff's claim was denied for failure to establish that Wright was in fact the decedent's son.

Plaintiff brought this Complaint for administrative review (Doc. No. 1) against Jo Anne B.

Barnhart as Commissioner of the SSA[1] ("Defendant") pursuant to 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3).  Now before this Court are the cross-motions for summary judgment of the

Defendant (Doc. No. 5) and Plaintiff (Doc. No. 6).  For the reasons stated below, Defendant's

motion is DENIED and Plaintiff's motion is GRANTED.

---

[1]This action was originally brought against Jo Anne B. Barnhart in her capacity as
Commissioner of Social Security.  However, because that position is no longer held by Ms.
Barnhart, the suit will be construed as having been brought against the individual currently
serving in that capacity, Michael J. Astrue.

1. **FACTS**

The underlying facts of this matter are not generally contested. Kaleb was born on November 21, 1989. His birth certificate lists the mother as "Carolyn Buchanen," gives Kaleb his current last name of "Wright," and mentions no father. On April 29, 1997, the decedent and putative father Claude A. Wright filed an application for disability insurance benefits. In the application, he stated that he had been married but currently was not, and that he did not have any children eligible for social security benefits. On October 15, 2001, Mr. Wright passed away. At the time, he was domiciled in Mississippi.

On May 26, 2002, Swan applied on behalf of her son Kaleb for benefits and a death payment on the decedent's account. In her application materials, Swan acknowledged the following: that no court had decreed that the decedent was Kaleb's father or that he otherwise owed support; that decedent left no will naming Kaleb as a beneficiary; that he had not paid for hospital expenses related to Kaleb's birth, and had not given information for use on the birth certificate; and that he had not made regular and substantial contributions to the child's support. Along with her application materials, Swan submitted a statement that the decedent had lived with her and had acknowledged paternity, along with a statement by decedent's father, Arch Wright, who corroborated that his son had lived with Swan and was thought to be Kaleb's father. The applications were denied initially and upon reconsideration. Swan filed a timely request for hearing on January 3, 2002.

Administrative law judge Angelo G. Nicchhitta ("the ALJ") conducted a hearing on July 9, 2003). With legal counsel present, Swan herself testified and also introduced the testimony of the deceased wage earner's father, Arch Wright. Swan stated that she had lived with the

decedent in Chicago, Illinois, from 1987 to 1989, and that the decedent was the only person with whom she had sexual intercourse in the ten months before Kaleb's birth. She also stated that the decedent had acknowledged Kaleb as his child and, after returning to Mississippi two months after Kaleb's birth, he occassionally called and visited. Decedent's father also testified, confirming that Swan and the decedent had lived together from 1987 to 1989. He also stated that his son consistently claimed Kaleb as his son, and that he and his relations welcomed the boy as part of their family.

On September 22, 2003, the ALJ denied Swan's applications in a four page opinion. The opinion contains the following sections: an "Introduction," which summarizes the relevant law under the Social Security Act and the intestacy laws of Mississippi; an "Evaluation of the Evidence," which lays out the facts and concludes that the legal requirements were not met; a "Finding," which states that Kaleb "failed to establish he is the child of wage earner Claude Wright for purposes of child's insurance benefits...and the lump sum death benefits payment"; and a "Decision" that the claimant was not entitled to any benefits. The evaluation section of the opinion that is most relevant to these proceedings states, in its entirety:

> Kaleb Wright was born in Cook County, Illinois, son of Carolyn Swan, on November 21, 1989. His birth certificate does not mention who his father is. The wage earner's father, [Arch Wright][2] testified his son, Claude Wright, lived with Carolyn Swan for two to three years before Kaleb was born and for about two months after Kaleb's birth. Carolyn Swan never married Claude Wright. [Arch Wright], testified Claude Wright told family members he was Kaleb's father. There is nothing in writing though. Claude Wright never acknowledged in writing that Kaleb was his child. He was never adjudicated to be his father, nor was he ever ordered by a court to contribute Kaleb's support.

---

[2]At the hearing, and throughout his opinion, the ALJ mistakenly referred to the decedent's father as "Claude Wright" or "Claude Wright, Sr." *See* Tr. at 14, 16, 86-88. However, it appears that the father's name is actually "Arch Wright," the name that will be used in this opinion.

Claude Wright filed for disability insurance benefits in 1997. He did not mention Kaleb as being his child on the application. Claude Wright was entitled to disability insurance benefits beginning August 1996, and when he turned 65 he received retirement insurance benefits. Claude Wright died on October 15, 2002. He lived in Mississippi when he died.

In this case, Kaleb would not be able to inherit under the specific Mississippi intestacy laws detailed above. The more relaxed federal standard is also not satisfied, as even though the evidence contains testimony of both Carolyn Swan and [Arch Wright], the additional factors required under the federal standard of Claude Wright living with or contributing to Kaleb's support at the time of his death is not satisfied.

Therefore, as the critieria either under Mississippi or federal law have not been satisfied, Kaleb Wright has not established that he is the child of wage earner Claude Wright.

Tr. at 16-17. No additional facts were mentioned in the opinion, other than an introductory statement that: "Careful consideration has been given to all the documents identified in the record as Exhibits 1 through 18, the testimony at the hearing, and arguments presented." *Id.* at 14. Plaintiff's subsequent request for review of this opinion by the SSA's Appeals Council was also denied.

## 2. LEGAL STANDARD

### a. Administrative Review Standard

The Agency's final decision is subject to judicial review pursuant to 42 U.S.C. § 405(g), which provides that the findings "as to any fact, if supported by substantial evidence, shall be conclusive." The district court will uphold the ALJ's ultimate decision as long as the ALJ's findings of fact are supported by substantial evidence and there are no errors of law. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In other words, so long as, in light of all the evidence, reasonable minds

could differ concerning [the benefits determination], we must affirm the ALJ's decision...."

*Books v. Chater*, 91 F.3d 972 (7th Cir. 1996) (applying substantial evidence standard).

In considering the entire administrative record, the district court does not reweigh evidence, resolve conflicts, decide credibility questions, or substitute its own judgment for that of the Commissioner. *Clifford*, 227 F.3d at 869. The court instead applies a "deferential, but not entirely uncritical" standard of review, because the ALJ's decision will not stand "if it lacks evidentiary support or [contains] an inadequate discussion of the issues." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "When an ALJ denies benefits, he must build an 'accurate and logical bridge from the evidence to his conclusion.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). He or she also must consider "both the evidence that supports, as well as the evidence that detracts from, the [ALJ's] decision." *Briscoe ex rel. Taylor,* 425 F.3d at 351 (quoting *Lopez ex rel. Lopez,* 336 F.3d at 539) (quotation marks omitted); *see also Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994) (the ALJ may not "select and discuss only that evidence that favors his ultimate conclusion").

An inference made by the ALJ may not be reconsidered simply because we find the opposite conclusion more reasonable or question the factual basis. *Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988). Also, the ALJ's opinion cannot be disregarded simply because of poor drafting; "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055 (7th Cir. 1989); *see also Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2002) (citing favorably Eight Circuit language

finding that "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case").

       b.     <u>Relevant SSA and Mississippi Law</u>

The Social Security Act ("the Act") provides Plaintiff with several different means of establishing that he is to be considered a "child" of the decedent wage earner for SSA purposes. *See generally* 42 U.S.C. §§ 402(d)(1), 416(h). However, the Plaintiff concedes that the only means of proof available to her is that which is provided in section 416(h)(2)(A), through which social security benefits would pass to the son "according to such law as would be applied in determining the devolution of intestate personal property...by the courts of the State in which he was domiciled at the time of his death." *See* Pl.'s Summ. J. Mem. at 3 ("[I]t is clear from the outset that the plaintiff cannot meet...the federal standards set forth above. Therefore, it was the ALJ's obligation to make a decision whether the plaintiff met her burden herein by proving paternity by the "clear and convincing" standard set forth in Mississippi's intestacy laws.").

It is uncontested that decedent resided in Mississippi at the time of his death, and that this Court must therefore consider whether the intestacy laws of that state would identify Kaleb as the child of the decedent. Under Mississippi law, parentage can be established through various actions taken before the decedent's death, including marriage between the parents, formal acknowledgment of parentage through the chancery court, or adjudication of paternity or legitimacy. *See, e.g.,* Miss. Code Ann. §§ 93-17-1(1-2); 91-1-15(3)(a-b); 93-9-28. However, none of these predicate actions were taken during the decedent wage earner's life in this case, so the only remaining avenue for proving paternity is that which is provided under Miss. Code Ann.

§ 91-1-15(3)(c) (allowing for an "adjudication of paternity after the death of the intestate, based upon clear and convincing evidence").

As of 1998, the SSA is empowered to step in and make the determination according to whatever standard would have been applied by the state courts. 404.355(b)(2) ("If applicable State inheritance law requires a court determination of paternity, we will not require that you obtain such a determination but will decide your paternity by using the standard of proof that the State court would use as the basis for a determination of paternity."). Therefore, under relevant law it fell to the ALJ to determine whether there was sufficient evidence showing paternity according to the "clear and conspicuous" standard of Mississippi's trusts and estates law regarding descent and distribution. *See* 42 U.S.C. § 416(h)(2)(A); Miss. Code. Ann. § 9-1-15(3)(c).

c.   Summary Judgment Standard

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, she must go beyond the pleadings and support her contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986).  In order to successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

**3.      ANALYSIS**

Plaintiff claims that the SSA's final decision, as stated in the ALJ's opinion, is not supported by substantial evidence and is contrary to legal standards.  For its part, Defendant claims that the ALJ applied the correct legal standards and that the supporting evidence was sufficient.  For the reasons stated below, this Court finds that proper review is impossible due to a lack of clarity regarding the application of relevant law and the treatment of testimonial evidence, and that the ALJ was improperly selective in his treatment of the evidence.

a.      <u>Lack of clarity regarding the applicable law</u>

The ALJ's treatment of the law is not troubling because he misstated the law, per se, but rather because he failed to articulate the law he applied.  Ultimately, extended consideration of this matter could only come from applying the "clear and convincing" standard to the facts of the case, but while the ALJ mentions this as a possible means of proof, it is impossible to determine from the opinion's sparse language whether the ALJ in fact applied the standard.  Therefore,

while it cannot be said that the ALJ committed an error of law, he nonetheless failed to make clear what law he applied so as to afford proper review of his opinion.

There are several reasons to believe that the ALJ may have appropriately weighed the factors according to the standard Plaintiff claims was lacking: (1) he correctly, if broadly, summarized the relevant law, including the "clear and conspicuous" manner of proof; (2) he explicitly stated that he had the power to consider the case on its merits according to that standard[3]; and (3) after concluding that "Kaleb would not be able to inherit under the specific Mississippi intestacy laws detailed above" – without additional explanation – he references the "more relaxed federal standard" in a manner that Defendant claims shows use of the "clear and conspicuous" standard.[4] Defendant therefore urges this Court to assume that the correct standard was used by the ALJ in making its determination.

In this instance the Court is prevented from determining whether the ALJ made an error of law by the vague language of its analysis. While errors of drafting that might have obscured the underlying legal principles are not necessarily fatal on review, here they might have obscured misapplication of the law. Many of the relevant standards for establishing paternity require that

---

[3] The ALJ stated that "For child claims filed on or after November 27, 1998, or pending on that date, a Social Security Administration adjudicator may make a paternity determination after the father's death by clear and convincing evidence." Op. at 3.

[4] Under Defendant's interpretation, the ALJ was comparing the "clear and conspicuous" standard that should have been applied in this instance to the "preponderance of the evidence" standard applicable to most SSA benefits determinations. To the extent that this supports the ALJ having applied the "clear and conspicuous" standard, it is nonetheless problematic. As Plaintiff points out, it is only when addressing the "more relaxed federal standard" – after discussion of the state laws has concluded – that the ALJ brings up the testimony of Swan and Arch Wright. *See* Pl.'s Summ. J. Mem. at 8-9. This would suggest that their testimony might not have been considered under the Mississippi law at all, but provides no explanation for why that might have been the case.

a claimant or plaintiff meet various preconditions, i.e., that the mother and putative father were married at the time, or that the putative father acknowledged his child in writing while alive. Therefore, many avenues of post mortem proof – in this matter and others similar to it – are reasonably and readily disregarded for the lack of such prerequisites. In those instances the outcome would be clear and a simple statement of the facts would likely be sufficient. However, the "clear and conspicuous" avenue of proof available to the claimant in this case required a more deliberate weighing of the evidence. Due to the cursory application of the law and the lack of discussion regarding significant evidence, we are not assured that the ALJ did not mistakenly assume that the lack of predicate actions precluded all proof; the language of the opinion contains no language to indicate that the ALJ weighed the evidence under the appropriate – or in fact any – standard.

The lack of clarity regarding the law applied by the ALJ makes proper review impossible.

   b.    <u>Selective evaluation of the evidence</u>

Based on the record as a whole, it is not entirely clear where a proper evaluation under the "clear and convincing" standard should have fallen; with respect to many of the individual factors, the ALJ acted within the realm of his discretion in considering and weighing the evidence. However, as the record now stands it appears that the ALJ was inappropriately selective in considering the evidence.

 The ALJ summarily stated that "[c]areful consideration has been given to all the documents identified in the record...the testimony at the hearing, and arguments presented," and directly mentioned some of the evidence from the record: "[Kaleb's] birth certificate does not mention who his father is. The wage earner's father, Claude Wright, Sr., testified his son,

Claude Wright, lived with Carolyn Swan for two to three years before Kaleb was born and for about two months after Kaleb's birth. Carolyn Swan never married Claude Wright. Claude Wright, Sr., testified Claude Wright told family members he was Kaleb's father. There is nothing in writing though. Claude Wright never acknowledged in writing that Kaleb was his child. He was never adjudicated to be his father, nor was he ever ordered by a court to contribute Kaleb's [sic] support." ALJ Op. at 3 (citations omitted).

With respect to several pieces of evidence the sparse language of the opinion is sufficiently clear and Plaintiff's arguments are unconvincing. For example, Plaintiff seems to suggest that factors appropriate under a section 216 analysis, such as marital status or court findings prior to decedent's death, cannot be factored into the ALJ's post-mortem adjudication. However, she has pointed to no statutory language preventing the ALJ from taken into account the entire body of evidence before him when applying the "clear and conspicuous" standard. Likewise, Plaintiff finds fault with the ALJ's emphasis on the lack of written documentation in this case. At this stage that decision might be entirely reasonable in light of the importance generally given to formal writings in paternity determinations.

However, though Plaintiff's attacks on the ALJ's approach to specific pieces of evidence might be unavailing, the selectivity of the ALJ in failing to consider some of the facts at all amounts to error. For nearly every fact mentioned in the ALJ's evaluation, there is countervailing evidence that was either absent from the opinion or was mentioned only in passing: though the birth certificate does not identify the father, it does give Kaleb the same name as the decedent; though Swan and the decedent never married, they did live together and had an allegedly monogamous relationship throughout the time frame of Kaleb's conception;

though the Decedent never acknowledged his son in writing, he did visit with him, acknowledged him informally, and convinced his own father that the paternity was beyond doubt. The ALJ's ruling and the conspicousness of these factors' absence all but requires that they be either disregarded or explained away in order to form the necessary "accurate and logical bridge from the evidence to his conclusion." *Lopez*, 336 F.3d at 539. The failure to address these central issues does not give this Court confidence that the ALJ properly developed his opinion.

Plaintiff relies a great deal on the Supreme Court of Mississippi's opinion in *Harris v. Johnson* (*In re Estate of Johnson*), 767 So.2d 181 (Miss. 2000), a case Defendant dismisses as inapposite. In that case, the court held that paternity had been established, despite the absence of DNA evidence, and in light of a wide variety of evidence that was available. The court in that case pointed to the fact that: the child claimant identified the decedent as his father and had been visited by him multiple times; the child's birth certificate listed decedent as the father; the claimant's mother testified that the child belonged to decedent and that she had no other intimate relations at the time of conception; and there was a general understanding in the community that the child was the decedent's son. *Id.* at 183-85. While Defendant is correct that *Johnson* is not entirely on point, it nonetheless shows that a proper consideration of paternity under the laws of Mississippi requires consideration of the record in its entirety.

To the extent that the ALJ did not discuss significant countervailing evidence, this absence makes proper review impossible. To the extent that the lack reflects selective consideration of the evidence, this amounts to an error on the part of the ALJ. *See*

*Golembiewski*, 322 F.3d at 917 ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

        c.      <u>Remand appropriate because ALJ failed to determine witness credibility</u>

Remand is also appropriate in this case because the ALJ provided no information regarding his determination of the credibility or weight to be assigned to hearing witnesses' testimony. The ALJ failed to evaluate the testimonial evidence in what should have been a significant issue in a weight-of-the-evidence determination; first, that of the decedent's father, who stated that paternity was clear according to all relevant accounts, and second, that of Clay, who stated that she was not intimate with any other individuals around the time of conception.

Much of the other evidence could reasonably be given minimal weight or disregarded completely as a matter of discretion, and second-guessing by this Court would be inappropriate. However, the importance of this testimony all but requires the ALJ to make some determination of its credibility and weight. The issue of the mother's credibility is of central importance under Mississippi law, which treats a paternity determination as "essentially a trial of the complaining mother's credibility." *Chisolm v. Eakes*, 573 So.2d 764 (Miss. 1990). That said, "[a]lthough the testimony of the mother in a paternity case may be given great weight, it cannot be considered conclusive." *Madden v. Madden*, 338 So.2d 1000 (Miss. 1976). It also fell upon the ALJ to determine the credibility of the father of the decedent, who testified that there was no reason to doubt paternity. It is implicit in the ALJ's final decision that Swan's testimony – claiming no sexual relations with other individuals at the time of conception – must have been incredible, and that of the decedent's father – attesting to his belief and that of his son that Kaleb was his own –

must have been similarly unbelievable or otherwise lacking in weight. His failure to address this evidence opens up the possibility that he overlooked it completely.

It is unclear whether and how the ALJ considered these issues, and his decisionmaking process therefore cannot be properly evaluated. This Court could speculate as to how the ALJ considered the testimony of Clay and Arch Wright. However, it is not the responsibility of this Court to comb through the record and speculate as to the logical paths woven from it; "principles of administrative law require the ALJ to rationally articulate the grounds for [his or] her decision and confine our review to the reasons supplied by the ALJ." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Where, as here, evaluation of key testimony is lacking, review cannot be properly confined to the ALJ's decisionmaking process.

The lack of clarity regarding the credibility and weight given to hearing testimony makes proper review impossible.

**4.    CONCLUSION**

An ALJ is not required to discuss every piece of evidence. However, where an ALJ effectively fails to discuss – or in some instances even mention – the legal principles applied, the most significant evidence in claimant's favor, and the weight given to that evidence, there is an inadequate basis for effective review and sufficient reason to remand. *See Golembiewski,* 322 F.3d at 915. The ALJ might have considered and disregarded all of these pieces of evidence, either through credibility determinations or the attribution of minimal weight, and if put to paper such determinations are largely unassailable. However, the current record evidences a lack of deliberateness and clarity on key points of fact and law. Where the case requires the weighing of contradictory evidence, such failings are unacceptable.

The SSA therefore has not demonstrated "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345 (7th Cir. 2005). Nonetheless, the facts are not so clearly in Plaintiff's favor as to warrant outright reversal and grant of benefits, as such a remedy is appropriate only where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741 (7th Cir. 1993). Here, the case centers on subjective determinations that require either additional consideration by the factfinder or an expanded record for review.

This Court therefore finds that clarification and additional consideration is necessary. For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED and that of the Defendant is DENIED. The matter is hereby REMANDED to the SSA for additional proceedings consistent with this opinion. This case is CLOSED.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: November 2, 2007